```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

                                    :
JEREMY RAMOS,                       :
                                    :
                Plaintiff,          :   Civil Action No.
                                    :   11-cv-259 (NLH)(KMW)
        v.                          :
                                    :   **OPINION**
COMMISSIONER GEORGE W.              :
HAYMAN, et. al.,                    :
                                    :
                Defendants.         :
                                    :

**APPEARANCES**:

Jeremy Ramos
608379-C/539143
South Woods State Prison
215 Burlington Road South
Bridgeton, N.J. 08302
    *Pro Se*

Daniel Michael Vannella, Esq.
New Jersey Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, N.J. 08625
    *Attorney for Defendants George W. Hayman and Karen Balicki*

**HILLMAN, District Judge**

   Plaintiff, Jeremy Ramos, an inmate incarcerated within the New Jersey Department of Corrections ("NJDOC"), has brought suit against George W. Hayman, the former NJDOC commissioner, and Karen Balicki, an administrator at the South Woods State Prison (collectively, "Defendants"), alleging, *inter alia*, violations of his federal constitutional rights, as well as state law claims. Defendants move for summary judgment and to dismiss Plaintiff's claims.

For the reasons that follow, Defendants' Motion for Summary Judgment will be granted on Plaintiff's federal claims. Additionally, the Court, *sua sponte*, will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## I. JURISDICTION

Plaintiff brought this matter before the Superior Court of New Jersey. Defendants removed this action to the United States District Court for the District of New Jersey. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

## II. BACKGROUND

Plaintiff is a prisoner who had been incarcerated within the NJDOC's Central Reception and Assignment Facility ("CRAF") from December 15, 2009 until February 4, 2010. Plaintiff was subsequently moved to another NJDOC facility, the South Woods State Prison ("SWSP") in Bridgeton, New Jersey.

Plaintiff alleges that George W. Hayman, as NJDOC commissioner, generated and mishandled a "Security Threat Group Member (GANG AFFILIATE)" list that caused Plaintiff to be perceived as a member of a gang. (Complaint at 2). Plaintiff's inclusion on this list subjected him to threats and assaults by gang members and prison staff. Hayman also did not properly supervise or train his NJDOC employees, says Plaintiff, thereby allowing gang violence to plague the prison and Plaintiff to

2

suffer harm.

Further, Plaintiff claims that Karen Balicki, an SWSP administrator, "allowed custody staff to execute a personal brand of street justice" within SWSP against him merely because Balicki misidentified Plaintiff as a gang member. (Compl. at 6).

In October 2010, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Cumberland County. Defendants then removed the action to this Court. Plaintiff sets forth federal and state constitutional claims, as well as state tort claims. In February 2011, Defendants moved for both summary judgment against and dismissal of Plaintiff's claims. As part of their motion, Defendants argue that Plaintiff did not exhaust his administrative remedies in prison.[1]

Defendants represent that NJDOC correctional facilities employ an administrative grievance process, the Inmate Remedy System, through which inmates may complain or grieve of problems or concerns they may have. The process is outlined in the NJDOC Inmate Handbook, given to all inmates.

During his incarceration at CRAF, from December 15, 2009 until February 4, 2010, Plaintiff did not file any inmate remedy forms to invoke the administrative process. While incarcerated at SWSP, however, Plaintiff filed one inmate remedy form, on February 13, 2010. In that remedy form, Plaintiff raised an

---

[1] Defendants' counsel certifies that Plaintiff was properly served the motion at his mailing address. Plaintiff, nevertheless, has not responded to Defendants' motion.

3

issue with his classification.  Eleven days after submission, according to Linda Linen, a SWSP Program Development Specialist, Plaintiff received a staff response "from a representative of the Special Investigations Division ('SID') of the NJDOC, directing him to write to Investigator W. Robbins at the NJDOC Central Office in Trenton, New Jersey with this request."  (Def. Mot., Linen Decl., ¶ 18; see also id., Exh. E).  Plaintiff did not write to Investigator Robbins, or any other SID employees at the Trenton office.  Additionally, Plaintiff failed to appeal any decision made regarding the original inmate remedy form that he filed.

### III. DISCUSSION

#### A. Standards of Review

Defendants' motion asks for both summary judgment against Plaintiff's claims and dismissal of any of Plaintiff's remaining claims for failure to state a claim upon which relief may be granted.

First, summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

Moreover, when considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true

5

and view them in the light most favorable to the nonmoving party. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'" (citation omitted)). Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the [claimant] has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with

6

enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)).  The movant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

### B.   Exhaustion of Administrative Remedies

Defendants contend that summary judgment must be entered against Plaintiff's claims because he has failed to follow the requisite administrative procedures for prisoners incarcerated within the NJDOC.  The failure to exhaust administrative remedies as specified in 42 U.S.C. § 1997e(a), Defendants argue, mandates dismissal.

"Under the Prisoner Litigation Reform Act [or, "PLRA"], a prisoner must exhaust available administrative remedies before bringing suit concerning prison conditions." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010) (citing 42 U.S.C. § 1997e(a)).  "Whether an administrative remedy is available to the prisoner is a matter of law," with the relevant inquiry being whether the remedy was "'capable of use; at hand.'" Id. (quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002)).  "Proper exhaustion of administrative remedies requires filing a timely or otherwise procedurally non-defective grievance." Id.  Furthermore, "[t]he prisoner must carry the grievance through any

7

available appeals process before the remedies will be deemed exhausted." Griffin v. Samuels, 2008 U.S. Dist. LEXIS 28841, at **5-6 (D.N.J. Apr. 8, 2008) (citation and internal quotation marks omitted).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion of remedies is mandatory. Concepcion v. Morton, 306 F.3d 1347, 1352 (3d Cir. 2002). Failure to exhaust such remedies directs dismissal of the prisoner's claim. Id. at 1355. "The burden of proving exhaustion of administrative remedies is on the [defendant-prison officials]." Cerome v. Moshannon Valley Corr. Center, 2010 U.S. App. LEXIS 24938, at *10 (3d Cir. Dec. 7, 2010).

At the time of Defendants' alleged misconduct, Plaintiff was an inmate incarcerated within an NJDOC facility, first at CRAF, and later at SWSP, which is where he filed an inmate remedy form and remains incarcerated to this day. Thus, Plaintiff was and is subject to any policies and procedures that were and are in place for NJDOC facilities.

Defendants contend that the PLRA's exhaustion requirement applies to the grievance procedure set forth in the NJDOC Inmate Handbook provided to all inmates. To support their claim, Defendants cite to Concepcion v. Morton, 306 F.3d at 1348-51, in which the Third Circuit held that an administrative grievance

8

procedure outlined in an NJDOJ inmate handbook constituted an administrative remedy within the scope of 42 U.S.C. §1997e(a). Upon review of the Inmate Handbook furnished by Defendants here, it appears that, in light of Concepcion's holding, the administrative procedure available to Plaintiff constitutes an administrative remedy within the scope of 42 U.S.C. §1997e(a). The Inmate Handbook at issue explains to inmates that they may utilize a two-step grievance process that includes both (1) an opportunity for the inmate to make a routine request or request an interview to voice any grievances,[2] and (2) an opportunity to administratively appeal the resulting decision or finding. (Def. Mot., Linen Decl., Exh. B; Def. Mot., Howells Decl., Exh. A). The Inmate Handbook explicitly states: "You are required to use the *Inmate Remedy System* before applying to the courts for relief[.]"  (Def. Mot., Linen Decl., Exh. B, at 53; Def. Mot., Howells Decl., Exh. A, at 53).

---

[2]    With respect to the initial requests, the Inmate Handbook describes the two options as follows:

> a.   "Routine Inmate Request" that is used to request and obtain information and to present issues, concerns or complaints in writing to the correctional facility staff, and
>
> b.   "Interview Request" that is used to request an in-person interview in order to present issues, concerns or complaints in writing to the correctional facility staff[.]

(Def. Mot., Linen Decl., Exh. B, at 54; Def. Mot., Howells Decl., Exh. A, at 54).

Here, Plaintiff failed to properly exhaust all available administrative remedies, pursuant to the Inmate Handbook and NJDOC procedure. As Defendants accurately point out, Plaintiff demonstrated both his knowledge of the administrative remedy process and his ability to use it. Although he did not file an inmate remedy form while he was housed at CRAF, he did file the form once he was transferred to SWSP. Eleven days after his submission, Plaintiff received an initial response, in which an NJDOC official working for the Special Investigations Division requested that Plaintiff write to Investigator W. Robbins at the NJDOC Central Office in Trenton, New Jersey to proceed with his grievance. Not only did Plaintiff not contact Investigator Robbins, he also did not appeal the initial response to his original inmate remedy form to the prison administrator. Therefore, Plaintiff failed to complete the two-step process with his inmate remedy form. See Spruill v. Gillis, 372 F.3d 218, 227-230 (3d Cir. 2004) (noting that an inmate must complete all steps in the administrative process before seeking judicial relief in court); see also N.J.A.C. 10A:1-4.4(d) ("The comprehensive Inmate Remedy System to include a 'Routine Inmate Request' and/or 'Interview Request,' and an 'Administrative Appeal' must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, complaints, or problems."). By failing to complete the process, Plaintiff did not exhaust all administrative remedies available to him. Plaintiff, it seems, proffers no argument to

10

the contrary.

Therefore, the Court finds that Plaintiff did not exhaust his administrative remedies, as he was required to do. Accordingly, Defendants' Motion for Summary Judgment is granted.

### C. Plaintiff's State Law Claims

Apart from his federal constitutional claims, Plaintiff also appears to raise constitutional and tort claims under New Jersey law. To the extent Plaintiff's only remaining causes of action are state law claims, the Court, *sua sponte*, declines to exercise supplemental jurisdiction over those claims at this time.

"A district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). To this point, "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Id. (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)).

In this case, Plaintiff's federal claims will be dismissed for failure to exhaust administrative remedies. Consequently, at this time no federal causes of action are currently pending before this Court. The only remaining claims in this matter involve New Jersey state law. Moreover, the Court finds that

considerations of judicial economy, convenience, and fairness do not affirmatively justify the exercise of supplemental jurisdiction under the circumstances of this matter.  The case is still in the early stages of litigation, with the complaint having been filed in October 2010 and the suit having been removed to this Court in January 2011.  Plaintiff will not be prejudiced by the Court's refusal to exercise supplemental jurisdiction because he still may attempt to pursue his state law claims in a timely manner in New Jersey state court –- Plaintiff's chosen forum where he originally filed his suit.  Also, in the event that he exhausts his administrative remedies and properly re-files before this Court, Plaintiff may reassert his state law claims in addition to his federal claims.

    Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims at this time.  Those claims will therefore be dismissed, without prejudice.

**IV.**   **CONCLUSION**

    For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.  Further, the Court, at this time, will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  An Order consistent with this Opinion will be entered.


DATE: July 27, 2011           /s/ NOEL L. HILLMAN
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.